UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| LONG ISLAND SPIRITS, INC., d/b/a LIV,<br><br>Plaintiff,<br><br>v.<br><br>LIV GOLF INCORPORATED; DAOU VINEYARDS, LLC; TREASURY WINE ESTATES; CHRISTOPHER HECK; KATHERINE O'REILLY; and DOES 1–10,<br><br>Defendants. | : | Case No. 2:26-cv-01710-JMA-JMW |

------------------------------------------------------------ x

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION**

**HERRICK, FEINSTEIN LLP**
Barry Werbin
Milton Springut
Joshua M. Herman
2 Park Avenue
New York, NY 10016
(212) 592-1400

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 3

III. ARGUMENT ........ 5

a. Plaintiff's Objection to the Irreparable-Harm Finding Should Be Overruled, Because Plaintiff's Own Admitted Delay Defeats Any Presumption of Harm ........ 5

b. Plaintiff's Two-Timeline Theory Is a New Argument Without Evidentiary Foundation ........ 7

c. Plaintiff's Objection to the Merits Finding Should Be Overruled ........ 9

d. Plaintiff's Objection to the Balance of Equities Should Be Overruled ........ 10

e. Plaintiff's Requested Relief Is Overbroad and the Public Interest Does Not Support It ........ 11

IV. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985)....................4, 5, 6

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)....................4

*Gagliardi v. Prager Metis CPAs LLC*,
738 F. Supp. 3d 469 (W.D.N.Y. 2021)....................2, 7

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)....................4

*Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*,
581 F. Supp. 3d 460 (E.D.N.Y. 2021)....................4

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993)....................9

*Kamerling v. Massanari*,
295 F.3d 206 (2d Cir. 2002)....................4

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016)....................9, 10, 11

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)....................4

*Metropolitan Taxicab Board of Trade v. City of New York*,
No. 08 Civ. 7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008)....................6

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)....................4

*Nambiar v. Cent. Orthopedic Grp., LLP*,
158 F.4th 349 (2d Cir. 2025)....................4

*Sterling Drug, Inc. v. Bayer AG*,
14 F.3d 733 (2d Cir. 1994)....................11

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
60 F.3d 27 (2d Cir. 1995)....................6, 7

*Tough Traveler, Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995)....................4, 5

*United States v. White*,
No. 6:24-CR-06012 EAW, 2024 WL 4476546 (W.D.N.Y. Oct. 11, 2024) ..............................3

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*,
959 F.3d 519 (2d Cir. 2020)..........................................................................................4

**Statutes**

15 U.S.C. § 1116(a) ..........................................................................................................4

28 U.S.C. § 636(b)(1) ........................................................................................................3

Fed. R. Civ. Proc. 72(b) .....................................................................................................3

## I. INTRODUCTION

Defendants LIV Golf Incorporated ("LIV Golf"), Daou Vineyards, LLC ("DAOU"), Treasury Wine Estates Americas Company ("TWEAC," named in the caption as "Treasury Wine Estates"), Christopher Heck, and Katherine O'Reilly (collectively "Defendants"), respectfully submit this response to Plaintiff's Objections to the Report and Recommendation of Magistrate Judge James M. Wicks, dated August 5, 2026 (the "R&R").

Magistrate Judge Wicks correctly concluded that plaintiff Long Island Spirits, Inc. ("LIV") failed to show irreparable harm, because LIV admittedly knew that LIV Golf was serving "LIV"-branded cocktails at a tournament by August 2025. Plaintiff nevertheless waited approximately seven months before commencing this action, sent no cease-and-desist letter during that period, and offered no explanation for its inaction. The R&R correctly held that this unexplained delay rebuts any presumption of irreparable harm and defeats the urgency required for the extraordinary remedy of a preliminary injunction. (R&R 8–10 & n.4)[1]

Plaintiff now attempts to avoid that conclusion by dividing the conduct at issue into two newly distinct "species" of infringement governed by separate timelines: first, cocktails bearing "LIV" in their names; and second, DAOU's supposed use of "LIV-formative" point-of-sale materials in liquor stores. (Objection 2–4) That reframing, in the form now advanced, does not appear in Plaintiff's opening motion or reply papers. The factual predicate for this theory of delay was only floated as a pure hypothetical during oral argument before Judge Wicks, with no supporting evidence, but was never presented as a justification for waiting to file suit. The Court need not consider a new theory that is unsupported by any factual evidence, which, if it existed,

---

[1] The Report and Recommendation will be referenced by the term "R&R," followed by the cited page number. Similarly, Plaintiff's Objections thereto will be referenced by the term "Objection," followed by the cited page number.

should have been presented with Plaintiff's preliminary injunction moving and reply papers. Indeed, new legal or factual arguments cannot properly be raised for the first time in objections to a report and recommendation. *Gagliardi v. Prager Metis CPAs LLC,* 738 F. Supp. 3d 469, 475 (W.D.N.Y. 2021).

Plaintiff's hypothetical new theory also fails on the merits. As to the LIV-named cocktails, which were offered for sale for merely six days at two tournaments in 2025, Plaintiff concedes knowledge by August 2025 and offers no legally sufficient explanation for waiting until March 23, 2026 to sue. Plaintiff's contention that it acted before another U.S. event cannot erase the preceding seven months of silence. Otherwise, a plaintiff could observe allegedly infringing conduct, remain inactive for months, and manufacture urgency simply by filing before the defendant's next scheduled event.

As to DAOU's sponsorship materials, Plaintiff identifies no actual advertisement, sign, bottle, or retail display in the United States that the Court can evaluate for likely confusion or imminent injury. Plaintiff instead relies on a general declaration stating that DAOU- and LIV Golf-branded materials are in market, an overseas champagne bottle used as an event prop, and the R&R's hypothetical example of what a shopper "may" assume *if* confronted with certain materials in a liquor store. None constitutes evidence that the hypothetical display imagined by Plaintiff exists in the United States.

The Objection also disregards the critical distinction the R&R drew between two materially different forms of relief. The R&R found a likelihood of success only as to cocktails using "LIV" in the drink name.[2] It expressly declined to find a likelihood of success as to

---

[2] In their own limited Objections to the R&R (ECF#53), Defendants objected to the finding in the R&R that plaintiff showed a likelihood of success as to cocktails using "LIV" in the drink name. Def. Objections at pp. 10–11.

DAOU's promotion of its LIV Golf sponsorship. (R&R 26) Yet Plaintiff's proposed injunction is not limited to drink names. As Plaintiff confirmed at oral argument, it would prohibit even a truthful statement that a wine producer is the "Official Supplier Partner of LIV Golf," while simultaneously permitting DAOU wine to be sold at LIV Golf events where LIV Golf branding is ubiquitous. (R&R 5–6 & n.1) The R&R itself emphasizes that Plaintiff is seeking very broad relief – not the very limited injunction Plaintiff purports to be seeking – noting that at oral argument Plaintiff's counsel confirmed the relief being sought included stopping LIV Golf and its sponsors from using the LIV Golf name and graphic logo for any alcoholic product related sponsorships. (R&R 4-5) Plaintiff offers no workable rule distinguishing permissible from prohibited conduct.

The Court should therefore overrule Plaintiff's Objection and adopt the R&R's recommendation that preliminary injunctive relief be denied. Consistent with Defendants' separate Objections, the Court should also decline to adopt the R&R's subsidiary findings favorable to Plaintiff concerning likelihood of confusion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), a district court reviews *de novo* those portions of a dispositive report and recommendation to which a party makes timely and specific objections. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 360-61 (2d Cir. 2025). However, *de novo* review does not provide an opportunity to present a materially different case from the one presented to the Magistrate Judge. A proper objection generally may not raise new legal or factual arguments that could have been, but were not, made before the Magistrate Judge. *Id.* at 359; *see also United States v. White*, No. 6:24-CR-06012 EAW, 2024 WL 4476546, at *2 (W.D.N.Y. Oct. 11, 2024).

A "preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies," and should not be issued unless the movant carries its burden through a "clear showing" of entitlement to that extraordinary relief. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A plaintiff seeking a preliminary injunction must establish: (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions going to the merits and a balance of hardships decidedly tipping in the movant's favor; and (3) that an injunction is in the public interest. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020). Irreparable harm remains "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). A plaintiff must demonstrate an injury that is actual and imminent, not remote or speculative, and one that cannot adequately be remedied by money damages after final judgment. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

In trademark cases, a plaintiff who demonstrates a likelihood of success on the merits is entitled to a rebuttable presumption of irreparable harm under the Trademark Modernization Act. 15 U.S.C. § 1116(a). But that presumption may be rebutted, and courts in this Circuit have long held that significant delay in seeking injunctive relief undermines the claim that immediate intervention is necessary. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 581 F. Supp. 3d 460, 469-70 (E.D.N.Y. 2021).

## III. ARGUMENT

### a. Plaintiff's Objection to the Irreparable-Harm Finding Should Be Overruled, Because Plaintiff's Own Admitted Delay Defeats Any Presumption of Harm

The R&R's irreparable-harm analysis rests on an "uncontested" timeline with respect to "LIV"-branded cocktails. Plaintiff's counsel admitted that Plaintiff became aware of Defendants' alleged infringement "no later than" August 2025, when cocktails using "LIV" in their names appeared at a LIV Golf event in Indianapolis and when Plaintiff became aware of the April 2025 press release announcing the DAOU - LIV Golf sponsorship. (R&R 9; Oral Arg. Tr. 13) Yet Plaintiff did not commence this action until March 23, 2026, and sent no cease-and-desist letter at any point during that period. (R&R 8–10) As the R&R correctly concluded, Plaintiff "sat on its hands for more than half a year." *Id.* at 9.

Nothing in the Objection explains that inactivity. Plaintiff does not contend that it was conducting a necessary investigation, that it was unaware of the relevant use, or that settlement discussions accounted for the pre-suit period.

Instead Plaintiff argues that the cocktail sales were "episodic" and that it filed suit before LIV Golf held another U.S. event. (Objection 2-3, 11-12) This formulation measures urgency from the date of the next scheduled event rather than from the date Plaintiff learned of the conduct it seeks to enjoin. Neither *Citibank* nor *Tough Traveler* supports that approach. Both look to what the plaintiff did after receiving notice of the allegedly infringing conduct. *Citibank*, 756 F.2d at 276-77; *Tough Traveler*, 60 F.3d at 968.

Plaintiff's event-calendar theory is also irreconcilable with the breadth of the conduct it seeks to enjoin. Plaintiff does not limit its motion to cocktails sold at LIV Golf tournaments; it also challenges DAOU's retail and on-premise sponsorship activations, which are not confined to the dates of LIV Golf's U.S. events. (Objection 3, 8, 12-15) Plaintiff therefore cannot excuse

its delay on the theory that no U.S. tournament occurred during the intervening period while simultaneously claiming that Defendants' allegedly infringing sponsorship activity extends beyond tournament grounds and continues in retail accounts nationwide. Indeed, Plaintiff itself has been distributing its liquor products nationwide under the "LiV" name since 2009 (R&R 2), and there is no justification for Plaintiff to have waited until the start of the 2026 LIV Golf season to first seek injunctive relief.

Plaintiff relies heavily on *Metropolitan Taxicab Board of Trade v. City of New York*, No. 08 Civ. 7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008), and *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995), for the proposition that delay does not defeat an injunction where the principal injury lies in the future. (Objection 10-12) Neither case supports Plaintiff's position. Read closely, each articulates the very rule that defeats Plaintiff's position: delay is excused only where the movant did not yet know it had a claim because the harm had not yet materialized, because the movant did not appreciate the severity of the infringement, or because it was diligently investigating. None of those conditions is present here, where Plaintiff admits it recognized "clear infringement" in August 2025 but nevertheless did nothing for approximately seven months before filing suit.

In *Metropolitan Taxicab*, the court expressly distinguished trademark infringement, noting that in trademark cases the injury is immediately apparent when the infringement occurs and therefore there is no comparable excuse for delay. 2008 WL 4866021, at *6. Plaintiff falls squarely on the *Citibank* side of the line that *Metropolitan Taxicab* itself drew. Having acknowledged that the alleged violation was immediately recognizable, Plaintiff cannot invoke a case that excused delay only because the complained-of harm had not yet occurred.

*Tom Doherty* likewise undermines Plaintiff's position. The Second Circuit explained that

delay rebuts irreparable harm where the trademark owner was aware of its rights, where it effectively concluded that immediate action was unnecessary, and where the defendant undertook significant expenditures during the period of delay that would be disrupted by injunctive relief. 60 F.3d at 39-40. Those circumstances are present here. Plaintiff unquestionably knew of the conduct it now calls infringement, yet sent no cease-and-desist letter and took no legal action for many months. Meanwhile, DAOU and TWEAC continued investing in retail and activation programs that Plaintiff now seeks to unwind.

**b. Plaintiff's Two-Timeline Theory Is a New Argument Without Evidentiary Foundation**

To escape the delay finding, Plaintiff attempts to divide the case into two "species" of infringement governed by separate clocks (Objection 2-4), contending that the August 2025 cocktails and DAOU's 2026 point-of-sale materials must, for purposes of delay, be treated as analytically distinct.

That theory is materially different from the case presented to Judge Wicks. Plaintiff's motion broadly sought to prohibit the use of "LIV" and "LIV GOLF" in connection with the sale, distribution, marketing, advertising, or promotion of alcoholic beverages. Plaintiff cannot now reconstruct its motion as two independent injunction applications in order to avoid an adverse delay finding. Arguments and factual theories that could have been presented to the Magistrate Judge should not be raised for the first time in objections. *Gagliardi*, 738 F. Supp. 3d at 475.

Even if the Court considers Plaintiff's newly separated point-of-sale theory, it does not establish irreparable harm. Plaintiff has not identified a single operative piece of U.S. point-of-sale material that the Court can evaluate for likely confusion or imminent injury.

The declaration of DAOU employee Tanya Beers on which Plaintiff relies states that

"DAOU- and LIV Golf-branded point-of-sale materials for the 2026 season are already in market at retail and on-premise accounts" (R&R 28), but it does not identify any wording, appearance, size, placement, prominence, or context of any material. It does not state that "LIV Golf" appears on a DAOU bottle, that any DAOU display appears beside Plaintiff's products, or that any material omits the DAOU name or otherwise suggests that LIV Golf is the source of Plaintiff's vodka.

Plaintiff's counsel acknowledged this evidentiary gap at oral argument, confirming he had not seen any such materials. A preliminary injunction cannot be based on an unseen hypothetical advertisement and counsel's conjecture about what it may contain.

Plaintiff repeatedly invokes the R&R's hypothetical statement that a customer seeing a bottle of DAOU wine "touting the *LIV*GOLF sponsorship" and later sees LIV vodka "may very well assume that the products have the same source." (R&R 22; Objection 1, 7-8, 14-15; emphasis in original) But Plaintiff treats that hypothetical illustration as a factual finding that such a bottle or display exists, with no supporting evidence.

The R&R did not find that DAOU sells bottles bearing "LIV Golf" in the United States, that such bottles appear beside Plaintiff's products, or that any American retailer displays the hypothetical arrangement. Indeed, after considering the *Polaroid* factors, the R&R expressly concluded that it could not find Plaintiff likely to succeed as to "DAOU's promotion of the sponsorship agreement." *Id.* at 26.

Plaintiff also relies on a photograph of a DAOU sparkling wine bottle displaying a LIV Golf-branded sticker on the reverse side (Objection 3-4), but the record establishes that the sticker was affixed by LIV Golf, the bottle was used as a podium prop at a United Kingdom LIV Golf event where Plaintiff has no trademark rights, was not sold or marketed, and was discarded

after the event. An event prop used outside the United States does not establish imminent domestic injury from a nationwide retail campaign.

Finally, Plaintiff invokes public reporting concerning a possible restructuring of LIV Golf and asserts that any perceived association threatens Plaintiff's goodwill. (Objection 1) But Plaintiff has identified no customer who believed Plaintiff's "LiV" vodka was affiliated with LIV Golf, no retailer or distributor who expressed confusion, no lost transaction, no threatened commercial relationship, and no instance in which Plaintiff lost control over its brand.

**c. Plaintiff's Objection to the Merits Finding Should Be Overruled**

The R&R correctly held that it "cannot conclude that Plaintiff is *likely* to succeed" as to DAOU's promotion of its sponsorship. (R&R 26; emphasis in original)

Plaintiff's objection rests on the premise that because the R&R found similarity, competitive proximity, and purchaser sophistication favoring Plaintiff, it was compelled to find a likelihood of confusion. (Objection 6-8, 13-15) That misstates the governing inquiry. The *Polaroid* factors are not a mechanical scorecard, and the ultimate question is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question," *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993), evaluated in light of the marks' "overall impression" and the context in which consumers encounter them. *Id.* at 1078; *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 668-69 (S.D.N.Y. 2016).

That context is precisely what is missing from Plaintiff's objection. Plaintiff seeks to enjoin unidentified "point-of-sale materials," which are not of record. Because trademark similarity must be evaluated in context rather than in the abstract, *Gruner + Jahr*, 991 F.2d at 1078, the absence of the challenged materials leaves the Court without the information necessary

to determine whether consumers are likely to perceive source, sponsorship, or affiliation confusion.

The distinction matters because a cocktail named the "LIV Clubhouse Cooler" incorporates Plaintiff's asserted mark directly into the name of an alcoholic beverage. By contrast, a statement that DAOU is an "Official Wine Partner of LIV Golf" identifies DAOU as the wine brand and LIV Golf as the sponsored sporting organization. Whether a particular sponsorship activation crosses the line into likely confusion depends on its actual presentation in real-world market conditions and channels of trade, not on an abstract assertion that any alcohol-related reference to "LIV Golf" is infringing.

Plaintiff produced no evidence of actual confusion, no evidence establishing commercial marketplace strength, and no evidence that LIV Golf adopted its name in an effort to trade upon Plaintiff's goodwill. Even under a reverse-confusion theory, Plaintiff must show that consumers are likely to believe its products originate with, are affiliated with, or are sponsored by LIV Golf. *See LVL XIII*, 209 F. Supp. 3d at 666. The relative size of the parties does not establish what consumers actually see in the marketplace. Because Plaintiff failed to place those materials before the Court, the R&R's conclusion that Plaintiff had not demonstrated a likelihood of success as to DAOU's sponsorship promotion follows directly from governing trademark principles rather than conflicting with them.

**d. Plaintiff's Objection to the Balance of Equities Should Be Overruled**

The R&R properly found that DAOU and TWEAC had already placed point-of-sale materials in retail and on-premise accounts, and had committed activation dollars, travel plans, and sales incentives for upcoming events. (R&R 28) Removing materials from every account would be extremely difficult, and that the committed spending could not be redirected without

substantial loss. *Id*. Plaintiff's proposed injunction would require Defendants and numerous retailers and commercial partners to determine which uses of the LIV Golf name fall within an undefined prohibition, threatening previously committed sponsorship activity without identifying the particular materials that supposedly cause confusion.

The balance-of-equities inquiry concerns the practical effect of granting or denying preliminary relief. In contrast to the disruption to Defendants, Plaintiff offered no evidence that DAOU's sponsorship of LIV Golf caused lost sales, damaged a customer relationship, interfered with a distributor, prevented an expansion, or produced actual confusion. Plaintiff waited months after learning of the "LIV" cocktail name use and did not demand that Defendants cease that use; its asserted hardship remains abstract and speculative.

**e. Plaintiff's Requested Relief Is Overbroad and the Public Interest Does Not Support It**

Plaintiff repeatedly calls its requested injunction "narrowly tailored" (Objection 17); it is not. Yet Plaintiff disclaims any effort to prevent DAOU wine from being sold or served at LIV Golf events, but seeks to prohibit even truthful designations identifying DAOU as an "official wine Partner of LIV Golf." Plaintiff's position is incoherent: It concedes Defendants may sell alcohol at LIV Golf events, yet offers no reason a truthful sponsorship reference injures its brand when on-site sales of DAOU wine do not.

Lanham Act injunctions must be "no broader than necessary to cure the effects of the harm caused." *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 750 (2d Cir. 1994). The proven conduct on which Plaintiff principally relies consists of isolated drink names; the injunction it seeks would extend far beyond those uses and regulate unidentified sponsorship materials that were never presented to the Court.

Because Plaintiff failed to place any challenged materials into the record, neither the Court nor Defendants can determine what conduct would remain lawful under Plaintiff's proposed order.

The public-interest factor does not support Plaintiff's proposed relief. Preventing consumer confusion serves an important public interest, but Plaintiff has not established likely confusion as to the unidentified sponsorship materials it seeks to enjoin. Conversely, the public has an interest in permitting truthful commercial speech, including accurate sponsorship designations such as DAOU's identification as a LIV Golf partner.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiff's Objection, adopt the Report and Recommendation's recommendation to deny the motion for a preliminary injunction, and — consistent with Defendants' own Objections — decline to adopt the R&R's findings favorable to Plaintiff on likelihood of success.

Dated: New York, New York
September 2, 2026

Respectfully submitted,

**HERRICK, FEINSTEIN LLP**

By: *<u>/s/ Barry Werbin</u>*
Barry Werbin
Milton Springut
Joshua M. Herman
2 Park Avenue
New York, NY 10016
(212) 592-1400

*Attorneys for Defendants*